1

2

3

4

5

6

7                         UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    BRIHANA HANIBLE,                          No.  2:21-cv-1315-SCR

11                      Plaintiff,

12         v.                                   ORDER

13    COUNTY OF SOLANO, et al.,

14                      Defendants.

15

16         Plaintiff is proceeding pro se in this action stemming from her arrest and detention in

17    February 2021.  She raises claims under 42 U.S.C. §1983, as well as state law claims.  The parties

18    have consented to magistrate judge jurisdiction and this matter has been assigned to the

19    undersigned for all proceedings.  ECF Nos. 46 & 97.  Now before the Court is Defendants'

20    motion for summary judgment (ECF No. 71).  The Court heard oral argument on the motion on

21    February 20, 2025, and allowed the parties the opportunity to present to the Court the most

22    relevant excerpts of their video evidence.  The Court resolved the pending discovery motions via

23    separate order.  ECF No. 107.  The Court now GRANTS IN PART and DENIES IN PART

24    Defendant's motion for summary judgment.

25                          **Procedural History and Background**

26         Plaintiff filed this action on July 26, 2021.  ECF No. 1.  Plaintiff alleged that the Solano

27    County Sheriff's office and three named officers violated her constitutional rights and that she

28    was "badly beaten" and suffered a fractured ankle that required surgery.  ECF No. 1 at 5.

1    Defendants filed a motion to dismiss (ECF No. 6), which Magistrate Judge Barnes granted on

2    January 11, 2022 (ECF No. 18).  Judge Barnes found the complaint alleged insufficient factual

3    matter and granted leave to amend.  Plaintiff filed a first amended complaint ("FAC") on

4    February 3, 2022.  Plaintiff's FAC named Solano County and five individuals as defendants:

5    Thomas Ferrara, Charles Dehoney, Kate Brunke, Rachel Figueroa, and Gary Nguyen.  ECF No.

6    22 at 1-2.  Defendants filed a partial motion to dismiss the FAC.  Judge Barnes granted the

7    motion and allowed Plaintiff further leave to amend.  ECF No. 37.

8         Plaintiff did not further amend,[1] and on October 19, 2022, Judge Barnes issued an order

9    which stated, in part: "[P]laintiff has not filed a second amended complaint.  In this regard, it

10   appears that plaintiff has elected to proceed on the amended complaint's remaining claims of

11   excessive force, violation of the Bane Act, assault, and battery, and consents to the dismissal of

12   all other claims."  ECF No. 39 at 1-2.  Defendants were directed to file an answer, which they did.

13   ECF Nos. 39 & 40.  The FAC (ECF No. 22) remains the operative pleading.  Judge Barnes issued

14   a Scheduling Order setting a deadline of September 15, 2023 for the completion of discovery, and

15   a November 3, 2023 deadline for pretrial motions.  ECF No. 51.  The parties participated in

16   settlement conferences.  ECF Nos. 57-59.

17        Judge Barnes later extended the deadline for completion of discovery to November 17,

18   2023, and for all pretrial motions to December 22, 2023.  ECF No. 64.  Defendants filed the

19   instant motion for summary judgment ("MSJ") on November 14, 2023.  After the filing of

20   opposition and reply briefs, ECF Nos. 89 & 93, Judge Barnes submitted the MSJ without oral

21   argument in January 2024.  ECF No. 94.  Judges Barnes did not rule on the MSJ, and this matter

22   was reassigned to the undersigned in August 2024.  ECF No. 97.  The Court then observed that

23   there were several discovery motions which could impact the decision on summary judgment, and

24   therefore issued an order setting a hearing on the motions.  ECF No. 98.  The order further

25   advised the parties to "be prepared to discuss the status of discovery and inform the Court of any

26   _____

27   [1] Plaintiff had in fact filed a putative Second Amended Complaint ("SAC") on March 7, 2022
     (ECF No. 26), in response to Defendants' Motion to Dismiss the FAC.  However, Judge Barnes
     did not discuss that putative SAC in her order on the MTD and had not granted Plaintiff leave to
28   file the SAC at the time.  In any event, the SAC and the FAC are substantially similar.

2

unresolved issues." *Id.* The order also allowed the parties the opportunity to present video evidence relevant to the MSJ in Court, informing the parties that some of the files they submitted were in a format that was not viewable. *Id.*

After hearing the matter on February 20, 2025, the Court allowed Plaintiff the opportunity to file a motion to supplement the summary judgment record with photographic evidence she displayed at the hearing, and a motion to reopen discovery. ECF No. 99. The Court considered those motions (ECF Nos. 101 & 102), and Defendants' opposition briefs, and issued an order resolving all pending discovery motions. ECF No. 107. The Court denied Plaintiff's motion to reopen discovery, which remains closed.

## MOTION FOR SUMMARY JUDGMENT

### I.     Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See*

1    *Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the

2    nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a

3    circumstance, summary judgment should be granted, "so long as whatever is before the district

4    court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

5      If the moving party meets its initial responsibility, the burden then shifts to the opposing

6    party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*

7    *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the

8    existence of this factual dispute, the opposing party typically may not rely upon the allegations or

9    denials of its pleadings but is required to tender evidence of specific facts in the form of

10    affidavits, and/or admissible discovery material, in support of its contention that the dispute

11    exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. However, a complaint that

12    is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified

13    complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise

14    from personal knowledge and contain specific facts admissible into evidence. *See Jones v.*

15    *Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir.

16    1995) (accepting the verified complaint as an opposing affidavit because the plaintiff

17    "demonstrated his personal knowledge by citing two specific instances where correctional staff

18    members . . . made statements from which a jury could reasonably infer a retaliatory motive").

19      The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

20    might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e.,

21    the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See*

22    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show the existence of a factual

23    dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It

24    is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

25    parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

26    *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce

27    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

28    *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The Court must also bears in mind Plaintiff's pro se status. Accordingly, the Court may consider the record before it in its entirety, even if a plaintiff does not strictly comply with the Local Rules. *See* Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(e)(4) ("[T]he court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant."). The Court will only consider those assertions that have evidentiary support in the record.

Rule 56(a) provides that the Court may grant partial summary judgment. "Summary adjudication, or partial summary judgment upon all or any part of a claim, is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim." *Hermosillo v. County of Orange*, 562 F.Supp.3d 802, 809 (C.D. Cal. 2021) (internal citation and quotation omitted). "A court may grant summary adjudication as to specific issues if it will narrow the issues for trial." *Megargee v. Wittman*, 550 F.Supp.2d 1190, 1199 (E.D. Cal. 2008); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) (citing Moore's Federal Practice for the proposition that "Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim ....").

## II.    Analysis

### A.  The Record

The evidentiary record is not robust, either in support of, or in opposition to summary judgment. Defendants' Motion for Summary Judgment ("MSJ") is supported largely by

declarations from the Defendants themselves stating that they acted reasonably or applied a reasonable amount of force.  *See* Defendants' Statement of Undisputed Facts, ECF No. 71-2.  Defendants also supported the MSJ with video from the body-worn camera of a non-party Sheriff's Deputy involved in arresting Plaintiff.  ECF No. 71-4.  Defendants further submitted video from inside the Solano County Justice Center Detention Facility (the "Jail"), as referenced in the Declaration of Lieutenant Asish Chandra.  ECF No. 71-6.  The video footage from inside the Jail was submitted in a ".g64x" format that did not comply with the Court's Electronic Evidence Submission guidelines.  *See* ECF No. 98.  Plaintiff also states she submitted a USB drive (ECF No. 90), but Defendants state they never received it (ECF No. 93 at 8).[2]  Defendants state that no depositions have been taken in this case.  ECF No. 93 at 10.  Defendants contend they have "produced all video footage to Plaintiff that is in possession of the County."  ECF No. 93 at 11.

Plaintiff's opposition brief (ECF No. 89) is not accompanied by any evidentiary exhibits.  However, as explained below, *infra* III.A.,2, Plaintiff's verified opposition brief serves to assert and dispute certain facts.  However, it bears noting at the outset that portions of Plaintiff's opposition contain incorrect or impertinent information.  Plaintiff contends that "[t]he most obvious defect in the defendants' motion is that it is not supported by any affidavits, exhibits, or other evidentiary materials."  ECF No. 89 at 1.  This is untrue.  Defendants submitted seven declarations in support of their motion.  ECF No. 71-3 to 71-9.  Plaintiff also oddly claims that Defendants only supported their MSJ with "a short series of excerpts from the deposition of their experts."  ECF No. 89 at 7.  This is also incorrect.  No deposition excerpts were attached to the MSJ, and in fact Defendants state that no depositions were taken.[3]  ECF No. 93 at 10.

////

////

////

---

[2]  Regardless, the only video of the incidents in question is the video produced by Defendants to Plaintiff.  The parties were allowed to play relevant excerpts at the February 20, 2025 hearing.
[3]  At page nineteen of Plaintiff's opposition, Plaintiff apparently cut and pasted from some other brief, discussing matters not at issue in this litigation—such as the Sherman Act and monopolies.

1          **1.      Defendants' Factual Allegations**

2          Defendants contend that Officers DeHoney, Kasper, and Austin went to a residence on the

3   morning of February 18, 2021, to serve Plaintiff with a temporary restraining order ("TRO").[4]

4   ECF No. 71-2, St. of Undisputed Facts at ¶ 1.  Defendants contend the TRO required Plaintiff to

5   immediately leave the residence and that Plaintiff did not comply with the officers' orders and

6   was placed under arrest.  *Id.* at ¶¶ 2-4.  DeHoney and Kasper were involved in placing Plaintiff in

7   handcuffs.  *Id.* at ¶ 5.  Plaintiff was then transported to the Solano County Justice Center—the

8   Jail—and booked into custody.  *Id.* at ¶¶ 7, 8, 10.  Defendant Figuero observed Plaintiff arrive at

9   the Jail and she was "screaming," said "get the fuck off of me," and refused to answer preliminary

10  questions.  *Id.* at ¶¶ 11-14.  Defendant Nguyen then escorted Plaintiff to the fingerprint scanner

11  and Plaintiff swung her head, pulled her arms away, and attempted to grab Nguyen.  *Id.* at ¶ 16.

12  Plaintiff was resistant to fingerprinting and the process was not completed.  *Id.* at ¶¶ 18-21.

13  Plaintiff was then moved to a "detoxification cell" and Defendants contend Plaintiff was resistant,

14  screamed loudly, and hit the cell door.  *Id*. at ¶¶ 22-27.  At about 1:45 p.m., Plaintiff agreed to be

15  fingerprinted by Deputy Figueroa, but then resisted again and was returned to her cell.  *Id.* at ¶¶

16  27-30.  Defendants contend Figueroa's shift ended at 7:00 p.m.  *Id*. at ¶ 31.

17         At approximately 3:45 a.m. on February 19, 2021, Solano County Sheriff's Custody

18  Sergeant Luz Solis approached Plaintiff to escort her to the female dress-out cell to put Plaintiff

19  in jail attire.  *Id.* at 36.  Defendants contend that Plaintiff refused to change her clothes, and that

20  "Officers were then forced to removed [sic] Plaintiff's clothes and redress [Plaintiff] in jail

21  attire," and that Plaintiff resisted.  *Id.* at ¶¶ 39-40.  Plaintiff was then "evaluated and cleared for

22  incarceration."  *Id.* at ¶ 41.

23         **2.  Plaintiff's Opposition Brief**

24         Plaintiff's opposition brief states that she was punched in the face when she went to be

25  fingerprinted, was scratched, and had her hair pulled.  ECF No. 89 at 3.  Plaintiff also alleges she

26  was taken to the floor, choked, and had her leg bent.  *Id.* at 4.  She further claims that as part of

27

28  [4] Officers Kasper and Austin are not named Defendants.

                                    7

1    booking process she was told she had to be searched and was thrown to the ground and her

2    clothes ripped off, and that an unknown defendant punched her ankle repeatedly.  *Id.*

3        Plaintiff's opposition brief also makes factual allegations that were not included in the

4    operative complaint.[5]  In describing the incident of being undressed for a search, Plaintiff now

5    says she was sexually assaulted and one female officer "stuck her fingers up my vagina."  *Id.* at 8.

6        Starting at page twenty-three of her opposition brief, Plaintiff responds to Defendants'

7    Statement of Facts.  As to Fact 17, Plaintiff states one of the officers "sucker punched" her in the

8    head and they were "beating the crap out of my head."  *Id.* at 28.  As to Fact 22, Plaintiff claims

9    she was physically assaulted in a detoxification holding cell after the fingerprinting incident.

10   ECF No. 89 at 30.  As to Fact 35, Plaintiff claims she asked for medical assistance after being

11   assaulted near the fingerprinting machine and after the dress-out room.  *Id.* at 33.  Plaintiff asserts

12   four additional facts, some of which are not facts, such as #3 ("How much are they willing to

13   settle for?").  *Id*. at 35.  In Plaintiff's additional fact #1, she says Defendants fractured her ankle,

14   causing permanent irreparable damage.  ECF No. 89 at 35.  Plaintiff did not submit any medical

15   records with her opposition.  However, some medical records were appended to her SAC.  ECF

16   No. 26 at 40-44.

17       Plaintiff signed her opposition brief with the statement: "I declare under penalty of perjury

18   that the foregoing is true and correct."  ECF No. 89 at 36.  It thus appears that Plaintiff intended

19   for her response to Defendants' Statement of Facts and her additional facts to be a "declaration."[6]

20   This evidence is appropriately considered in opposition to the MSJ.  *See Jones v. Blanas*, 393

21   F.3d 918, 923 (9th Cir. 2004) ("[B]ecause Jones is pro se, we must consider as evidence in his

22   opposition to summary judgment all of Jones's contentions offered in motions and pleadings,

23   where such contentions are based on personal knowledge and set forth facts that would be

24   admissible in evidence, and where Jones attested under penalty of perjury that the contents of the

25   [5]  The original complaint did not mention sexual assault, but did state Plaintiff's "clothes were
26   ripped off me."  ECF No. 1 at 6.  The FAC alleged Plaintiff was sexually assaulted by having her
     clothes removed.  ECF No. 22 at ¶ 41.  The Second Amended Complaint (which is not operative
27   as it was filed without leave while a motion to dismiss the FAC was pending) does reference
     "cavity searching her."  ECF No. 26 at ¶ 41.
28   [6]  She also references a supporting declaration, but no separate declaration was filed.

1    motions or pleadings are true and correct.").

2             **3.  Video Evidence**

3             Defendants submitted hours of video evidence in support of their motion.  The Court

4    informed the parties that some of this video evidence was submitted in an unviewable format.

5    ECF No. 98.  The Court thus allowed the parties the opportunity to play excerpts they believed to

6    be significant at the hearing on February 20, 2025.  The Court has also reviewed the entirety of

7    the video that was submitted in the proper file format and was captured on the Axon body video

8    cameras.  That video shows officers arrive at the home where Plaintiff is residing to serve a

9    protective order.  The officers tell Plaintiff that she has 10 or 15 minutes to get ready and go.

10   Plaintiff is told that if she does not leave she will go to jail and that if she wants to challenge the

11   order in court that the courthouse opens at 8 a.m.  Plaintiff is at times uncooperative, yells, curses,

12   and says it's "racist."  The officers allow her more than 10 to 15 minutes to get ready, as the

13   initial video is 32 minutes and 24 seconds in duration.

14            About 30 minutes after the first officers arrive at the residence, additional officers arrive.

15   The next body camera segment is 12:03 in duration, and it is during this period that officers arrest

16   Plaintiff.  Plaintiff enters into a room in the residence—which appears to be her father's room

17   (her father obtained the protective order)—and says she is looking for some clothing items.  At

18   this point, about 7 minutes and 45 seconds into the video (at which point officers have been on

19   scene approximately 40 minutes), Plaintiff is arrested and handcuffed.  There is a brief scuffle

20   during the handcuffing process.  Within about a minute, officers have removed Plaintiff from the

21   home.

22            The Court additionally reviewed a body camera segment of 5:40 in duration where an

23   officer returns to the home to pick up a cell phone and ID, and a rear seat camera segment of 34

24   minutes which captures Plaintiff's transport to, and initial arrival at, the Jail.  At around the 22-

25   minute mark of that segment, there are sounds consistent with Plaintiff screaming and kicking the

26   cage between the front and back seats.  After arrival at the Jail, Plaintiff appears calm, inquires

27   how she can sue the police department, and says, "I'm suing the fuck out of you all."  She also

28   states that she is refusing medical attention.

                                                       9

1    At the hearing on February 20, 2025, defense counsel and Plaintiff played portions of the

2 initial arrest videos described above, as well as portions of video footage from stationary cameras

3 inside the Jail.  The Jail's fixed camera footage does not include sound, but captures at least some

4 of the actions of Solano County Sheriff's personnel during some of the moments when Plaintiff

5 alleges she was subjected to excessive force, assault, and battery.  The footage at the

6 fingerprinting station from approximately 8:45 a.m. to 8:55 a.m. shows Sheriff's personnel

7 unsuccessfully attempting to fingerprint Plaintiff while her hands are handcuffed behind her back.

8 Several Sheriff's personnel then place her in a cell next to the fingerprinting station, at which

9 point it appears Plaintiff goes to the ground.  There is no visible activity consistent with any

10 Sheriff's personnel striking Plaintiff.

11    The next footage played at the hearing is also from the fingerprinting station, from

12 approximately 1:45 to 2 p.m. on the same day.  It shows Plaintiff walking out of the holding cell

13 without a limp or other apparent injury.  The footage does not show any Sheriff's personnel

14 shoving Plaintiff into a cell.

15    The next footage played at the hearing, from the booking area, from approximately 3:40 to

16 3:45 p.m. on the same day, shows Plaintiff apparently refusing to leave a cell in that area.

17 Sheriff's personnel then enter the cell and remove her from the cell, but do not strike her or shove

18 her into anything.

19    The next footage played at the hearing was from "Female Holding B," at an unknown

20 time, and shows Plaintiff walking without a limp.  This footage appears to show Plaintiff walking

21 towards the dress-out area.

22    Defendants contend there is no video of the dress-out area, where all agree Plaintiff was

23 forcibly changed from her civilian attire into a jail uniform early the next morning, that is the

24 morning of February 19, 2021.  This is another point in time in which Plaintiff alleges Sheriff's

25 personnel subjected her to excessive force and fractured her ankle.  Footage played at the hearing

26 that was recorded outside the dress-out area shows Plaintiff walking with a limp after leaving that

27 area.

28 ////

1      **B.      Excessive Force**

2          Defendants' MSJ argues that Plaintiff's claim for excessive force "is barred."  ECF No.

3   71-1 at 10.  However, Defendants then present no argument that would "bar" as a matter of law

4   her excessive force claims.  Instead, Defendants' argument is based in "reasonableness" and

5   contends "the evidence is clear that Defendants did not use excessive force in connection with the

6   initial contact with Plaintiff, her detention, or arrest."  *Id*. at 11.  Defendants then contend that

7   Plaintiff was uncooperative and that her "noncompliance" made the use of force "both reasonable

8   and necessary."  *Id*. at 13.

9          "The reasonableness of force used is ordinarily a question of fact for the jury."  *Garlick v.*

10  *County of Kern*, 167 F.Supp.3d 1117, 1145 (E.D. Cal. 2016), citing *Liston v. County of Riverside*,

11  120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of

12  force used is ordinarily a question of fact for the jury.").  The excessive force inquiry "nearly

13  always requires a jury to sift through disputed factual contentions" and the Ninth Circuit has

14  stated on many occasions that summary judgment in the context of excessive force claims

15  "should be granted sparingly."  *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012).

16         While the Court must ordinarily view the facts in a light most favorable to the non-

17  movant, and give the non-movant the benefit of reasonable inferences, this standard is somewhat

18  modified when there is clear video evidence of the events in question.  *See Scott v. Harris*, 550

19  U.S. 372, 378 (2007).  In *Scott*, the Supreme Court criticized the lower court's recitation of the

20  facts, in a light favorable to plaintiff, where the "videotape tells quite a different story."  *Id.* at

21  379.  The Supreme Court stated: "When opposing parties tell two different stories, one of which

22  is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

23  not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.*

24  at 380.  The Supreme Court concluded that the lower court "should have viewed the facts in the

25  light depicted by the videotape."  *Id.* at 381.

26         Here there are three time periods at issue, and the importance of the video evidence as to

27  each is different: 1) the initial period where officers arrive at the residence, arrest Plaintiff,

28  transport her, and arrive at the Jail; 2) events at the Jail such as fingerprinting, that were captured

1  on video; and 3) events at the Jail, such as in the dress out room, for which there is no video.

2  Each period in time, and its components, are analyzed below:

3       At the residence until arrival at the Jail: As to the first period of time, there is thorough

4  video evidence (constituting approximately an hour and a half of footage). In light of that

5  evidence, no reasonable jury could conclude that officers used excessive force during that time

6  period. Even when handcuffing Plaintiff at the residence, after Plaintiff repeatedly delayed in

7  responding to officers' requests for cooperation, the video evidence shows only a minimal

8  application of force. Accordingly, Defendants are entitled to summary judgment on the excessive

9  force claim as to the events at the residence, arrest, transport, and initial arrival at the Jail.

10       As to the second period of time, video evidence fails to definitively capture every moment

11  where Plaintiff alleges excessive force was used. From the area where Plaintiff arrived at the Jail

12  to the fingerprinting area: Plaintiff's response to the statement of facts says that while walking to

13  the fingerprinting machine, the officer was holding her arm too tight, the handcuffs were too

14  tight, and the officer pulled up on the handcuffs. ECF No. 89 at 28. There is no video evidence

15  of that period at all, and Plaintiff's statement creates a disputed issue of fact as to the

16  reasonableness of force.

17       Fingerprinting area: Plaintiff contends that at the fingerprinting machine, she could not

18  get her hands on the machine because they were handcuffed behind her back, that she felt a

19  "sucker punch to my head," her hair was pulled, and "someone was beating the crap out of my

20  head" *Id.* The video evidence demonstrates some awkwardness as an officer attempts to

21  fingerprint Plaintiff while her hands are cuffed behind her back, but flatly refutes her allegation

22  that she was punched in the head or had her hair pulled at the time. There is no issue of disputed

23  fact as to whether Defendants used excessive force at the fingerprinting area.

24       Detoxification cell: Plaintiff then claims she was taken to detoxification cell where,

25  "They throw me on the floor, ten officers rushed in stepping on me, kneeing me, kicking me,

26  punching me, twisting my leg up and back, the officer in the black and white plaided shirt." *Id.* at

27  30. As described above, the video shows Plaintiff go to the ground in a cell near the

28  fingerprinting area, and the view is somewhat obscured of the inside of the cell. The acts of

excessive force that Plaintiff alleges are not visible on the video. Defendant Figueroa also submitted a declaration concerning the fingerprinting and detox cell. ECF No. 71-8. She contends that Plaintiff "was actively resisting" and that she "tried to gain control" of Plaintiff. *Id.* She states that because Plaintiff was not complying, she made the decision to place Plaintiff in the detox cell, and "[d]ue to Plaintiff's resistance, Plaintiff was placed on the ground, which allowed us to remove the handcuffs." *Id.* at ¶15. Thus, the record establishes that there was a use of force by Defendants, the extent of which is disputed, and the video evidence—while tending to suggest that Defendants did not use excessive force in the detoxification cell—is not conclusive. As a result, Defendants are not entitled to summary judgment on the excessive force claim as to the allegations involving the detoxification cell.

Dress-out room: Finally, as there is no video of the interactions between Plaintiff and Defendants in the dress-out room, the video evidence has no impact on that time period. Plaintiff's MSJ opposition brief states that Defendants used excessive force "by brutally beating the plaintiff in the female dress-out room, fracturing her right ankle, causing permanent irreparable damn [sic] to her right ankle and causing a scar on her left wrist." ECF No. 89 at 35. Defendants offer only the Declaration of Luz Solis (ECF No. 71-9) as to this time period. Solis states that she went to Plaintiff's cell at about 3:45 a.m. on February 19, 2021, to escort her to the dress-out cell. She states that Plaintiff "refused to walk unassisted" and once at the dress-out cell "refused to undress." ECF No. 71-9 at ¶¶ 5-7. Solis admits force was used, stating that Officers were "forced to remove Plaintiff's clothes and redress" her. *Id.* at ¶ 8. The Solis declaration does not attempt to quantify the amount of force used, but does state that Plaintiff was "evaluated and cleared" by medical staff after the interaction. *Id.* at ¶ 9.

The Court is somewhat troubled by the lack of evidence presented as to this critical time period. Solis does not identify any of the officers involved in the dress-out room incident. Plaintiff has also argued that Defendants refused to provide such information and she therefore made public records requests and sent subpoenas to try to obtain such information. At oral argument, defense counsel stated that none of the four female officers pictured on video around the time of the dress-out incident are named Defendants.

13

1    It should not have been difficult for Plaintiff to identify the officers involved, as that

2    information should have been provided by Defendants early in the litigation.  Pursuant to the

3    initial disclosure provisions of Federal Rule of Civil Procedure 26(a)(1), a party is obligated to

4    provide "without awaiting a discovery request" the name and contact information "of each

5    individual likely to have discoverable information—along with the subjects of that information—

6    that the disclosing party may use to support its claims or defenses."  Certainly, the officers who

7    interacted with Plaintiff in the dress-out room, and were involved in the use of force, and the

8    medical staff who evaluated Plaintiff, would all be individuals likely to have discoverable

9    information.  Presumably, Defendants might also use their testimony to support their defense that

10   any force used was reasonable.  Plaintiff has stated in discovery related motions that such

11   information was not provided to her.  To provide clarity and finally resolve this issue for the

12   record, the Court will direct that Defendants file their initial Rule 26(a)(1) disclosures and clearly

13   identify the date on which such were served.

14   Solis' representation that Plaintiff was "evaluated and cleared" by medical staff is vague,

15   and Defendants offer no evidence from any medical staff.  Plaintiff disputes this characterization

16   and states: "I don't know what she considers clear, but I was bleeding from my wrist, couldn't

17   stand up straight, and my foot was pointed outward.  I could not walk was limbing [sic].  I told

18   them I need to see a medical professional again."  ECF No. 89 at 35.  The video presented at oral

19   argument showed Plaintiff limping after leaving the dress-out room.  The Court concludes that a

20   genuine issue of material fact exists as to whether Defendants used excessive force in the dress

21   out room.

22               **C.  Bane Act claim, California Civil Code § 52.1**

23   Defendants contend that Plaintiff cannot show interference or attempted interference with

24   a state or federal constitutional right, accompanied by coercion.  Defendants once again make a

25   factual argument – first, they did not threaten Plaintiff, and second, a reasonable person would not

26   have felt threatened through the officers' use of standard procedures.  ECF No. 71-1 at 14-16.

27   The Bane Act provides a right of action "[i]f a person or persons, whether or not acting under

28   color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats,

intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state...." *Bender v. County of Los Angeles*, 217 Cal.App.4th 968, 976-77 (Cal. Ct. App. 2013), citing Cal. Civ. Code § 52.1.  "Although the elements of an excessive force claim under the Bane Act are similar to those under Section 1983, the Bane Act requires an additional element of specific intent." *Fortson v. City of Los Angeles*, 628 F.Supp.3d 976, 993 (C.D. Cal. Sept. 19, 2022).  In *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018), the court stated that the Bane Act requires "a specific intent to violate the arrestee's right to freedom from unreasonable seizure."  This specific intent does not require a showing that the defendant was "thinking in constitutional or legal terms at the time of the incidents," but rather a showing of "reckless disregard for a person's constitutional rights is evidence of specific intent." *Id*. at 1045.

"[A] plaintiff in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act."  *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015).  However, the Ninth Circuit in *Lyall* also suggested that the analysis is different when there is an allegation of excessive force and cited to *Bender*, 217 Cal.App.4th 968 ("Where, as here, an arrest is unlawful and excessive force is applied in making the arrest, there has been coercion independent from the coercion inherent in the wrongful detention itself—a violation of the Bane Act.") (internal quotation and citation omitted). *Id.*

In *Reese*, the Ninth Circuit relied on the California Court of Appeal's decision in *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766 (2017).  In *Cornell*, the court stated "that the use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1.'"  *Id.* at 799.  The Ninth Circuit in *Reese* stated it could draw two conclusions from *Cornell*: "First, the Bane Act does not require threat, intimidation or coercion element of the claim to be transactionally independent from the constitutional violation alleged.  Second, the Bane Act requires a specific intent to violate the arrestee's right."  888 F.3d at 1043 (internal citation and quotation omitted).

1    Unlike § 1983 claims, a defendant may be liable under the doctrine of respondeat superior

2  for a Bane Act claim.  *See Cravotta v. County of Sacramento*, 717 F.Supp.3d 941, 966 (E.D. Cal.

3  2024) ("Courts have held that Bane Act claims may be maintained against municipalities based on

4  vicarious liability" citing *Cameron v. Craig*, 713 F.3d 1012, 1023 (9th Cir. 2013) and Cal. Gov.

5  Code 815.2(a)).

6    As to the first time period, Defendants are entitled to summary judgment on the Bane Act

7  claim, as there was no interference with Plaintiff's constitutional rights.

8    As to the second and third time periods, Defendants are not entitled to summary judgment

9  on the Bane Act claim, for largely the same reasons identified as to the excessive force analysis

10  under § 1983.  Defendants' argument that they did not threaten or coerce Plaintiff is fact-based

11  and they have presented insufficient evidence to demonstrate that there is no dispute as to this

12  material fact.  The surveillance video from inside the Jail, other than the video of Plaintiff's initial

13  arrival that was captured on the Axon body camera, does not contain audio.  Without audio, it is

14  only minimally useful on the issues of threats and coercion.  More importantly, there are disputed

15  facts as to excessive force in the detoxification cell and the dress-out room, where she alleges

16  officers fractured her ankle.  A jury could draw a reasonable inference from that evidence of the

17  necessary specific intent.  *See Reese*, 888 F.3d at 1045 (describing specific intent in the excessive

18  force context as, "the jury must find that the defendants 'intended not only the force, but its

19  unreasonableness, its character as more than necessary under the circumstances") (internal

20  citation omitted).  Summary judgment is denied on the Bane Act claims as to the alleged incidents

21  occurring in the detoxification cell and the dress-out room.

22    **D.    Assault and Battery**

23    Defendant argues that Plaintiff's assault and battery claims are a "counterpart to the

24  federal claim of excessive use of force" and that a battery claim is not established unless Plaintiff

25  proves an unreasonable use of force.  ECF No. 71-1 at 16-17.  A battery claim against a law

26  enforcement officer under California law requires proof that the use of force was unreasonable.

27  *Edson v. City of Anaheim*, 63 Cal.App.4th (Cal. Ct. App. 1998); see also *Fortson v. City of Los*

28  *Angeles*, 628 F.Supp.3d 976, 994 (C.D. Cal. Sept. 19, 2022) ("Proving claims for assault and for

1    battery against a police officer … requires a showing that the officer used unreasonable force.").

2    Thus, as both claims of excessive force under § 1983, and assault and battery under state law,

3    look to the reasonableness of the use of force, the analysis for both types of claims is effectively

4    identical. *Fortson*, 628 F.Supp.3d at 994 ("The test employed under California law to determine

5    if the force used was unreasonable is identical to the test employed under federal law applying

6    Section 1983.").

7         The analysis here would thus be the same as set forth above in discussing excessive force.

8    Plaintiff would not be able to prove an unreasonable use of force as to the first period of time—

9    the events at the residence, arrest, transport, and initial arrival at the Jail.  However, as to time

10   period two, Plaintiff may be able to prove the use of force was unreasonable in the detoxification

11   cell.  And as to time period three, there is no video evidence of the dress out room and Plaintiff

12   has created a genuine issue of material fact as to unreasonable use of force.

13        Additionally, to the extent that Defendants argue that Plaintiff has not identified the

14   correct individuals involved in the dress out room incident, the County of Solano is a Defendant

15   in this action.  State tort claims can proceed on a theory of respondeat superior liability.  *See*

16   *Rodriguez v. County of Los Angeles*, 654 F.Supp.3d 1029, 1049 (C.D. Cal. 2023) ("[W]hile there

17   may be no respondeat superior liability for Los Angeles County under § 1983, the County is

18   vicariously liable under state law for the torts of its deputies—even the unnamed ones—that were

19   committed during their official duties.") (internal citations omitted).  The California Court of

20   Appeals has stated that "[a] plaintiff seeking to hold an employer liable for injuries caused by

21   employees acting within the scope of their employment is not required to name or join the

22   employees as defendants."  *Perez v. City of Huntington Park*, 7 Cal.App.4th 817, 820 (1992).

23   "The plaintiff may be unable to identify which employee committed the wrongful act, but this is

24   not fatal to the employer's liability, if the evidence establishes that some employee in the scope of

25   employment committed the wrongful act."  *Id*.

26        **E.  Qualified Immunity**

27        Defendants argue that as their actions did not violate Plaintiff's constitutional rights, they

28   are entitled to qualified immunity.  ECF No. 71-1 at 18.  Defendants argue that even assuming a

1    constitutional violation, Plaintiff has the burden of establishing the right was clearly established

2    and has not done so.  *Id.* at 19.  Plaintiff's declaration in response to the MSJ states that

3    Defendants used excessive force "by brutally beating the plaintiff in the female dress-out room,

4    fracturing her right ankle, causing permanent irreparable damn [sic] to her right ankle and causing

5    a scar on her left wrist."  ECF No. 89 at 35.

6        Government officials enjoy qualified immunity from civil damages unless their conduct

7    violates clearly established statutory or constitutional rights.  *Jeffers v. Gomez*, 267 F.3d 895, 910

8    (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When a court is

9    presented with a qualified immunity defense, the central questions for the court are: (1) whether

10   the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

11   defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue

12   was "clearly established."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from, Pearson v.*

13   *Callahan*, 555 U.S. 223 (2009) (the two factors set out in *Saucier* need not be considered in

14   sequence).

15       "[W]here the officers' entitlement to qualified immunity depends on the resolution of

16   disputed issues of fact in their favor, and against the non-moving party, summary judgment is not

17   appropriate."  *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003).  Additionally, "the

18   doctrine of qualified immunity does not shield defendants from state law claims."  *Johnson v. Bay*

19   *Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013).

20       Defendants' brief discussion of qualified immunity (ECF No. 71-1 at 18-19) makes no

21   attempt to define the right at issue or whether it was clearly established.  Rather, Defendants

22   assert in conclusory fashion "it would not have been clear to a reasonable officer or reasonable

23   government official that Defendants' conduct was unlawful in the situation they confronted."

24   Plaintiff contends that she "began getting undressed" in the dress out room and that an officer

25   entered to observe.  ECF No. 89 at 34.  She contends officers then threw her to the floor, punched

26   her, caused a laceration on her arm, and fractured her ankle.  *Id*.  She states another officer kicked

27   her in the face during the incident.  *Id.* at 35.

28       A pretrial detainee's excessive force claim may arise under the Fourteenth Amendment's

1  Due Process Clause, *see Kingsley v. Hendrickson*, 576 U.S. 388-89, 400 (2015), but Fourth

2  Amendment standards of reasonableness govern such claims,[7] *see Lolli v. County of Orange*, 351

3  F.3d 410, 415 (9th Cir. 2003) ("[T]he Fourth Amendment sets the applicable constitutional

4  limitations for considering claims of excessive force during pretrial detention."); *Dunham v.*

5  *County of Monterey*, 2020 WL 9395224, at *1 (N.D. Cal. Apr. 29, 2020) (applying Fourth

6  Amendment excessive force standards); *Warren v. County of Riverside*, 2021 WL 4594777, at *7

7  (C.D. Cal. Mar. 26, 2021) (same).  Accepting Plaintiff's version of the facts as to the

8  detoxification room and dress-out room incident, as the Court must at this stage of the litigation,

9  there is no basis for a qualified immunity defense.  *See, e.g., McClam v. Verhelst*, 2022 WL

10  1046807, at *1 (9th Cir. 2022) (finding that in 2016 it was clearly established that an officer could

11  not "stomp aggressively and with great force" on a pretrial detainee's hand); *Contreras v. City of*

12  *Nogales*, 2022 WL 22885295, at *6, *9 (D. Ariz. Sept. 8, 2022) (rejecting qualified immunity

13  when the plaintiff alleged that, among other things, officers unnecessarily hit him in the head);

14  *Sants v. Seipert*, 2021 WL 465292, at *5-6 (E.D. Cal. Feb. 9, 2021) (rejecting claim for qualified

15  immunity because "any reasonable officer in Officer Seipert's position would have known that

16  repeatedly striking Mr. Sants in the head would be an excessive use of force"); *Wallisa v. City of*

17  *Hesparia*, 369 F. Supp. 3d 990, 1003, 1015 (C.D. Cal. 2019) (rejecting qualified immunity for

18  officers who punched in the head, tased, and kneeled on a suspect who had fled and was crawling

---

19

20  [7]  A recent district court decision explained why the Fourth Amendment excessive force
framework applies despite pretrial detainees deriving primary protection against excessive force
from the Due Process Clause:

21

22      The [*Kingsley*] Court held that to succeed on a § 1983 claim brought under the Fourteenth
        Amendment Due Process Clause, a pretrial detainee "must show only that the force

23      purposely or knowingly used against him was *objectively unreasonable*" to prevail on an
        excessive force claim. [576 U.S.] at 396-97 (emphasis added). In explaining what

24      "objectively unreasonable" means, the Court relied heavily on *Graham v. Connor*, 490
        U.S. 386 (1989), a case that dealt with the meaning of that phrase within the context of the

25      Fourth Amendment. … [F]ollowing the approach in *Kingsley* and in Ninth Circuit cases
        deciding claims of pretrial detainees under the Fourteenth Amendment, this Court will

26      apply the Fourth Amendment excessive force framework outlined in *Graham*, because the
        analysis will be the same.

27

28  *Applegate v. Baines*, 2025 WL 392588, at *4 n.4 (D. Or. Feb. 4, 2025).

1   out from underneath a bus to surrender at the time of the encounter).  There are genuine disputes

2   of material fact as outlined above, and if Plaintiff was brutally beaten and suffered a broken ankle

3   in the changing room, Defendants are not entitled to qualified immunity.

4   **III.  Conclusion**

5           For the foregoing reasons, IT IS HEREBY ORDERED:

6       1.  Defendants' motion for summary judgment (ECF No. 71) is GRANTED IN PART

7           and DENIED IN PART, as set forth herein;

8       2.  Defendants shall file their initial Rule 26 disclosures within 14 days, and shall also

9           indicate the date the disclosures were served and whether the officers involved in the

10          dress out room incident on February 19, 2021 were disclosed; and

11      3.  This matter is set for a status conference by Zoom on July 10, 2025 at 11 a.m., at

12          which the Court will set the remaining final pretrial deadlines and a trial date.

13  DATED: June 20, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

20